UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-12624-RGS

RGOI ASC, LTD. d/b/a RIO GRANDE ORTHOPAEDIC INSTITUTE
AMBULATORY SURGERY CENTER and MONROE COUNTY HEALTH
CARE AUTHORITY d/b/a MONROE COUNTY HOSPITAL

v.

GENERAL ELECTRIC COMPANY,
GE HEALTHCARE, INC., and DATEX-OHMEDA, INC.

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION TO COMPEL MEDIATION AND MOTION TO DISMISS

May 6, 2019

STEARNS, D.J.

RGOI ASC, LTD. (RGOI) and Monroe County Health Care Authority

(MCH)[1] are the plaintiffs in this putative class action brought against General

Electric Company, GE Healthcare, Inc., and Datex-Ohmeda, Inc.

(collectively GE). Plaintiffs allege that GE violated Section 2 of the Sherman

Act by monopolizing the sale of parts and training required to service its gas

anesthesia machines. GE now moves to dismiss the action and compel

mediation or, in the alternative, to dismiss the Amended Complaint for lack

---

[1] RGOI is a Texas corporation doing business as Rio Grande
Orthopaedic Institute Ambulatory Surgery Center. MCH is an Alabama
corporation doing business as Monroe County Hospital.

of subject-matter jurisdiction and for failure to state a claim.  For the reasons to be explained, GE's motion to compel mediation will be allowed.

## BACKGROUND

The facts, viewed in the light most favorable to plaintiffs as the nonmoving party, are as follows.  GE sells gas anesthesia machines to hospitals, physician groups, clinics, and other customers.  It competes with independent service organizations (ISOs) to service its machines.  According to the Amended Complaint, GE has monopolized the market to severely disadvantage ISOs.  For instance, in 2011, GE appointed Alpha Source, Inc., as its exclusive distributor of parts to ISOs, which, in turn, raised the price of parts, service manuals, and other documents needed to service its machines.  Then, in 2014, GE reduced the number of service trainings for its machines and placed "economically infeasible" conditions on the trainings, including requiring ISOs to disclose their service customers and to provide verification from them.  Am. Compl. (Dkt # 26) at 17.  Plaintiffs allege, in short, that GE's "policies have led to antitrust price injury inflicted on [its] customers by raising and maintaining prices to above-competitive levels, causing deterioration in service quality, and limiting customer choice as to service." *Id.* ¶ 88.

RGOI and MCH purchased gas anesthesia services from GE pursuant to several service agreements.[2]  Among other provisions, the terms provided the following:

> 19.1.  <u>Dispute Resolution</u>.  The parties will first attempt to resolve in good faith any disputes related to this Agreement.  Violation of GE Healthcare's license, confidentiality or intellectual property rights will cause irreparable harm for which the award of money damages alone is inadequate.  GE Healthcare may: (i) seek injunctive relief and any other available remedies; and/or (ii) immediately terminate the license grant and require Customer to cease use of and return the Software and Third Party Software.   Other than these violations or collection matters, unresolved disputes will be submitted to mediation prior to initiation of other means of dispute resolution.

Greenwald Decl. (Dkt # 23), Exs. 3 and 4 ¶ 19.1 (emphasis in original).[3]  GE seeks to compel mediation because, in it is view, plaintiffs' Sherman Act claim falls within the scope of this provision, and mediation under the service agreements is a condition precedent to litigation.  In the alternative, GE

---

[2] The court may consider these service agreements because they are central to the Amended Complaint.  *See Lydon v. Local 103, Int'l Bhd. of Elec. Workers*, 770 F.3d 48, 53 (1st Cir. 2014) ("On a motion to dismiss, . . . a judge can mull over 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'") (citations omitted and alteration in original); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (providing that the court may, on a motion to dismiss, consider "documents central to plaintiffs' claim").

[3] Plaintiffs note that not all of their original service agreements contained this provision.  However, as GE asserts, the absence of the provision in prior agreements does not void the provision in the current agreements.

moves to dismiss the Amended Complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## DISCUSSION

A party seeking to compel mediation "must show (1) that a valid agreement to [mediate] exists, (2) that the movant is entitled to invoke the [mediation] clause, (3) that the other party is bound by that clause, and (4) that the claim asserted comes within the clause's scope."[4] *Ouadani v. TF Final Mile LLC*, 876 F.3d 31, 36 (1st Cir. 2017), quoting *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003). "When deciding whether the parties agreed to [mediate] a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 61 (1st Cir. 2018), quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).[5] Under both Texas

---

[4] The court may "consult precedent interpreting arbitration requirements to analyze the mediation provision at issue here." *Thompson v. Cloud*, 764 F.3d 82, 91 (1st Cir. 2014). The parties agree, however, that the Federal Arbitration Act (FAA) has no determinative application.

[5] Since the service agreements are governed by "[t]he law of the State where the Product [was] installed or the Service [was] provided." Greenwald Decl. (Dkt # 23), Exs. 3 and 4 ¶ 17.2, Exs. 5 and 6 ¶ 1.2, Texas law governs RGOI's agreements, and Alabama law governs MCH's. The parties agree that "the 'general rules of contract interpretation in Texas and Alabama are

and Alabama law, the court will enforce as a matter of law an unambiguous contract. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) ("If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law."); *Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 746 (Ala. 2000) ("If the court determines that the terms are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written.").

Plaintiffs oppose GE's motion to compel mediation on several grounds. First, plaintiffs argue that their antitrust claim falls outside the clause's scope because it does not relate to the service agreements but "to GE's anticompetitive conduct directed towards GE's competitors." Pls.' Opp'n (Dkt # 34) at 3. Plaintiffs cite several cases in which a court has held that antitrust claims were not covered by broad contractual provisions similar to the one at issue here, which covers "any disputes related to this Agreement." *See, e.g.*, *Burda v. Wendy's Int'l, Inc.*, 659 F. Supp. 2d 928, 938 (S.D. Ohio 2009) ("Plaintiffs' [antitrust] claims . . . are not 'actions arising out of or

---

substantially similar.'" GE Reply (Dkt # 39) at 2 n.3, quoting Pls.' Opp'n (Dkt # 34) at 2 n.1.

relating to this Agreement.'"); *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1517 (10th Cir. 1995) ("Coors's claims regarding market concentration are not related to the licensing agreement, and Coors may therefore litigate those claims."); *In re Remicade Antitrust Litig.*, 2018 WL 5314775, at *10 (E.D. Pa. Oct. 26, 2018) (finding that the antitrust claims "do not 'arise from' the Distributor Agreement and therefore are beyond the scope of arbitrable disputes").

However, GE argues, and the court agrees, that plaintiffs' monopolization claim falls squarely within the scope of the mediation provision because it *relates* to the service agreements. Plaintiffs purchased services from GE pursuant to these agreements, and now allege that GE has used its purported monopoly power to raise the prices for such services. The alleged increased cost clearly relates to the service agreements, which govern the contractual price, especially given that "related to" is interpreted broadly under Texas and Alabama law. *See Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (interpreting "relating to" as a "broad" clause that "embrace[s] all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute"); *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 684 So. 2d

102, 110 (Ala. 1995) ("The terms 'relating to' have been interpreted more broadly than the terms 'arising out of[.]'").

Second, plaintiffs contend that the dispute resolution provision should be construed strictly against its enforcement. Under Texas and Alabama law, conditions precedent are disfavored and will only be enforced if compelled by the contractual language. *See Cal-Tex Lumber Co. v. Owens Handle Co.*, 989 S.W.2d 802, 809 (Tex. App. 1999) ("[B]ecause of their harshness in operation, conditions precedent are not favored in law. Courts will not construe a contract provision as a condition precedent unless they are compelled to do so by language that may be construed in no other way.") (citation omitted); *Lemoine Co. of Alabama v. HLH Constructors, Inc.*, 62 So. 3d 1020, 1025 (Ala. 2010) ("[C]ondition precedents are not favored in contract law, and will not be upheld unless there is clear language to support them.") (citations omitted). According to plaintiffs, the dispute resolution provision here does not clearly support a condition precedent. The court disagrees.

The dispute resolution provision provides, in relevant part, that "[t]he parties will first attempt to resolve in good faith any disputes related to this Agreement," and that "unresolved disputes will be submitted to mediation prior to initiation of other means of dispute resolution." Greenwald Decl.

(Dkt # 23), Exs. 3 and 4 ¶ 19.1.  By use of the imperative "will," the clause makes clear that mediation must "first" be undertaken "prior to" initiating any other form of dispute resolution.  Thus, mediation is a condition precedent to litigation.  *See Tattoo Art, Inc. v. Tat Int'l, LLC*, 711 F. Supp. 2d 645, 652 (E.D. Va. 2010) (holding that the plaintiff "failed to satisfy the condition precedent necessary to trigger the right to initiate litigation" in an agreement that required "mediation . . . prior to filing any action"); *Ascension v. Thind Hotels, LLC*, 2010 WL 519695, at *5 (S.D. Tex. Feb. 8, 2010) (finding a contract requiring mediation before arbitration "valid and binding").

Third, plaintiffs maintain that efficiency counsels that the case proceed regardless of the enforceability of the mediation provision.  *See Gate Precast Co. v. Kenwood Towne Place, LLC*, 2009 WL 3614931, at *5 (S.D. Ohio Oct. 28, 2009) (Recognizing "that mediation could unnecessarily delay resolution of this matter[,] . . . in the interests of justice as between these parties, the Court finds it appropriate to maintain the current pretrial calendar, while ordering the completion of mediation with the District Court Mediator[.]").  According to plaintiffs, mediation will not only delay resolution of the case, but will also be futile because GE will simply echo the same arguments it has made here in support of its Motion to Dismiss.

The efficiency argument, while not risible, is trumped by the clear language of the parties' contract. Nor is it a foregone conclusion that mediation will be futile. *See A. Raymond Tinnerman Mfg., Inc. v. TecStar Mfg. Co.*, 2012 WL 1191617, at *2 (E.D. Wis. Apr. 10, 2012) ("[M]ediation is not futile simply because one party has taken the position that it is not liable."). Mediation rather provides the parties an opportunity to compromise and potentially resolve their dispute or at least narrow its parameters. Allowing plaintiffs to forgo mediation would, as GE contends, "ignore their contractual commitment to mediate." GE Reply (Dkt # 39) at 6; *see also Cal-Tex Lumber Co.*, 989 S.W.2d at 809 ("[W]here a contract does contain a condition precedent, it must either have been met or excused before the other party's obligation can be enforced.").

In short, plaintiffs' Sherman Act claim falls within the scope of the service agreements' valid dispute resolution provision, which makes mediation the ticket of admission to litigation, if such is to ensue. The court will, as plaintiffs request, stay the case pending mediation.[6] *See N-Tron Corp. v. Rockwell Automation, Inc.*, 2010 WL 653760, at *7 (S.D. Ala. Feb. 18, 2010) ("When confronted with objections that plaintiffs have initiated

---

[6] Although GE requests dismissal, it argues that the court has discretion to stay the case in the alternative. *See* GE Reply (Dkt # 39) at 7.

litigation without satisfying arbitration or mediation requirements, courts routinely stay rather than dismiss the proceedings to allow for implementation of the agreed-upon dispute resolution mechanism.").

## ORDER

For the foregoing reasons, GE's motion to compel mediation is ALLOWED.[7]  The Clerk will stay the case pending mediation.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[7] Having so concluded, the court need not reach GE's alternative motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and for failure to state a claim.